```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
```
_____

```
SHATIKA MONIC MCNEIL
O/B/O S.L.S.,
```
                              Plaintiff,    **14-cv-06339**
                                            **DECISION AND ORDER**
        -vs-

```
CAROLYN W. COLVIN, Acting
Commissioner of Social Security,
```

                              Defendant.
_____

Plaintiff Shatika Monic McNeil ("plaintiff") brings this action on behalf of her infant daughter, S.L.S ("SLS" or "claimant"), pursuant to Title II of the Social Security Act ("The Act"), seeking review of the final decision of the Commissioner of Social Security ("the Commissioner") denying her application for supplemental security income ("SSI").

Currently before the Court are the parties' competing motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons set forth below, plaintiff's motion is denied and defendant's motion is granted.

### PROCEDURAL HISTORY

On May 26, 2011, plaintiff filed an application for SSI on behalf of claimant alleging disability as of June 1, 2009. Administrative Transcript ("T.") 96-102. Following a denial of that application, a hearing was held at plaintiff's request on June 29, 2012 before administrative law judge ("ALJ") Michael

Devlin, and testimony was given by claimant and her mother. T. 37-48.

The ALJ, in his review of the evidence, applied the three-step required analysis set forth in the Social Security Administration's SSI regulations (*see* 20 C.F.R. § 416.924[a]) and made the following findings: (1) plaintiff was a school-aged child on May 26, 2011; (2) she had not engaged in substantial gainful activity since May 26, 2011, the SSI application date; (3) her selective mutism, social phobia, and asthma were severe impairments; (4) her impairments did not meet or medically equal the severity of any impairments listed in 20 CFR Part 404, Subpart P, Appendix 1; (5) her impairments did not functionally equal the severity of the listings (20 CFR 416.924[d] and 416.926[a]); and (6) plaintiff had not been disabled as defined by the Act since May 26, 2011. T. 24-33.

With respect to finding number four, the ALJ found that plaintiff's asthma did not meet the criteria in Listing 103.03 and her social phobia did not meet the criteria in Listing 112.06. T. 24.  In finding number five, the ALJ, after considering the testimony, teacher reports, claimant's statements, medical opinion evidence, and the opinions of family and friends, found that, as result of her impairment, plaintiff has (1) a less than marked limitation in acquiring and using information, (2) no limitation in attending and completing tasks, (3) a marked limitation in interacting and relating with others, (4) no limitation in moving

about and manipulating objects, (5) a less than marked limitation in the ability to care for himself, and (6) a less than marked limitation in health and physical well-being. T. 27-33.

The Appeals Council denied plaintiff's request for review of the ALJ's decision. T. 1.  This action ensued.

## DISCUSSION

### I. General Legal Principles

42 U.S.C. § 405(g) grants jurisdiction to district courts to hear claims based on the denial of Social Security benefits. Section 405(g) provides that the District Court "shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g) (2007).  The section directs that when considering such a claim, the Court must accept the findings of fact made by the Commissioner, provided that such findings are supported by substantial evidence in the record.

When determining whether the Commissioner's findings are supported by substantial evidence, the Court's task is "'to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn.'" *Brown v. Apfel*, 174 F.3d 59, 62 (2d Cir. 1999), *quoting Mongeur v. Heckler*, 722 F.2d 1033, 1038 (2d Cir. 1983) (per curiam). Section 405(g) limits the scope of the Court's review to two inquiries: whether the Commissioner's findings were supported by substantial evidence in

3

the record as a whole and whether the Commissioner's conclusions are based upon an erroneous legal standard. *See Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir.2003).

**II.   Educational and Medical Evidence**

Education reports from kindergarten and first grade show that although SLS had many strengths, including listening very well, following directions, and making things, among others, her refusal to speak was a concern. T. 182-183. SLS's instructional support team recommended a ten-point intervention plan. T. 182. The first invention results report, dated June 5, 2009, noted possible selective mutism, average receptive language, weaker expressive language, significant withdrawal and anxiety issues, and average to above average nonverbal intelligence. T. 180. At the beginning of the 2009 school year, SLS's teacher reported that SLS was doing well, participating in class, whispering to her, and writing well, but still exhibiting anxiety in school and while speaking. T. 179. By November 2009, SLS was making some progress in speaking to her teacher during class, doing well academically, and enjoying herself on the playground and in the lunchroom, however with continued social and emotional anxiety. T. 178. By March 2010, SLS was speaking more often, although by the end of May, her academic progress had stalled. T. 176.

A teacher questionnaire completed by SLS's first-grade teacher on June 20, 2010 revealed that although SLS had a "very serious problem" participating in classroom discussions and providing oral

explanations and descriptions, she would read and speak to her teacher outside of the classroom and had no other problems related to acquiring and using information. T. 186.  SLS had no problems in any area of attending and completing tasks or moving about and manipulating objects. T. 187, 189.  With respect to interacting and relating with others, SLS had a "very serious problem" in the seven out of 13 activities that involved using language and verbal expression, with no problem in the remaining activities. T. 188. With respect to caring for herself, SLS had: no problem with half of the activities; a slight problem handling frustration appropriately; an obvious problem responding to changes in her mood and using appropriate coping skills in a school; and a serious problem asserting emotional needs and asking for help. T. 190.

In a function report to the Social Security Administration ("SSA") dated May 25, 2011, it was noted that SLS's limited ability to communicate prevented her from making new friends, getting along with adults or school teachers, and playing team sports. T. 115. It was further noted that SLS did not talk in school and that her teachers were seeking ways to "help [her] open up and feel comfortable communicating." T. 117.  In June 2011, the Fairport Central School District recommended a "504 Accommodation Plan" for SLS, "as a student with a disability that substantially limits one or more major life activities." T. 134, 197-199.  Her eligibility for the 504 plan continued for the following school year. T. 213.

A June 13, 2011 teacher questionnaire completed by SLS's second grade teacher, Lorri Willard, reported that SLS did not speak and that, in the area of acquiring and using information, Ms. Willard was greatly concerned about any academic or social component that required verbalization. T. 161. With respect to attending and completing tasks, SLS, a careful student, had a "slight problem" completing class work and homework, staying organized, and working accurately, and she was "very slow" to complete assignments and tasks. T. 162. SLS had "very serious" problems interacting and relating with others when it involved speaking, including using appropriate language, vocabulary, and grammar, telling stories, and holding a conversation. T. 163-164. Ms. Willard noted that "[b]eing a selective mute had prevented [SLS] from fully engaging in academic/social opportunities." T. 163. SLS generally had no problems moving above and manipulating objects or caring for herself. T. 165. Her teacher noted that, instead of asking for help, SLS typically stood near an adult and waited to be noticed. T. 165. Ms. Willard further noted that SLS did not take medication on a regular basis and that she was frequently tardy or absent from school. T. 166, 168.

A second-grade Pupil Progress report reveals that SLS struggled with academic speaking and expression, but showed improvement or met expectations in every other area. T. 169-170. Ms. Willard noted that SLS was "a kind child, who appears to be learning and making progress in most academic areas." The teachers

6

further remarked that it was "difficult to know whether we are successfully determining her current level of functioning. She is most likely understanding more than we are able to observe." T. 170. Despite her unwillingness to speak, SLS was well-liked by her classmates and she joined them in social settings, appearing happy. T. 170-171. By March of second grade, SLS continued "to make good academic progress" and correctly answered questions about what she had read when prompted by her teacher. T. 170. SLS expressed ideas through writing, but continued to use a whisper voice and declined to participate in group discussions. T. 170.

SLS's third-grade Pupil Progress Report for 2011-2012 reveals that, apart from "[s]peaks clearly with expression" and "uses appropriate presentation skills," the SLS met expectations or showed progress toward the current expectations in all areas by June. T. 156-157, 195-196. The report further revealed that SLS needed improvement in exhibiting self confidence, seeking help when needed, and participating in class discussions and activities. T. 157. Her third-grade teacher commented that SLS was "a sweet and hard working child" whose "inability to speak inhibit[ed] her learning." T. 157. In November, however, her teacher noted that SLS had steadily improved to the point of speaking in a whisper three times a day and participating in guiding reading. T. 157. By March, SLS had shown academic growth, she was a hard worker who striving to do well, and she was respectful to classmates and

adults. T. 157. SLS met or exceeded expectations in all physical education areas during that year. T. 158.

A June 1, 2012 teacher questionnaire complete by SLS's third grade teacher, Sarah Dawson, reveals that SLS had no problems in the domains of attending and completing tasks, interacting and relating with others, and moving about and manipulating objects. T. 205-207. With respect to acquiring and using information, Ms. Dawson noted that because SLS rarely spoke, it was difficult to tell how well SLS was understanding the presented concepts. T. 204. Ms. Dawson observed a serious problem in SLS's participation in class discussions and providing oral explanations in descriptions, but she noted that SLS had no problem recalling or applying previously learned material and only a slight problem in the remaining seven activities. T. 204. With respect to caring for herself, SLS had an obvious problem asserting emotional needs monthly, and using appropriate coping skills and asking for help weekly, but no problem in the remaining activities apart from a slight problem with personal hygiene. T. 208. Ms. Dawson was unaware of any chronic or episodic medical conditions and did not observe SLS take medication on a regular basis. T. 209.

The medical evidence reveals that when SLS was examined at Strong Health in 2007, there no communication issues, no asthma exacerbations, and that she had an "epi pen" for her peanut allergy. T. 218. Older medical records show that SLS was treated

for a urinary tract infections and abnormal chest sounds as a baby. T. 222-226.

On July 26, 2011, Dr. Christine Ransom performed a psychiatric evaluation and Dr. Harbinder Toor performed a pediatric evaluation at the request of the Division of Disability Determination. T. 227-234.  Dr. Ransom found that SLS was cooperative and socially appropriate during the evaluation. T. 228.  Her speech was intelligible and fluent, her quality of voice was clear with normal intonation, and her expressive and receptive language skills were age appropriate. T. 228.  Her intellectual functioning appeared to be average, with a general fund of information appropriate to her experience. T. 228.  Dr. Ransom found SLS's judgment to be fair in light of her refusal to speak at school and in public settings. T. 229.  Dr. Ransom opined, among other things, that SLS could attend to, follow, and understand age-appropriate directions and complete age-appropriate tasks, respond appropriately to changes in her environment, and learn in accordance with her cognitive functioning. T. 229. T. 229.  Dr. Ransom further opined that SLS would have moderate difficulty adequately maintaining appropriate social behavior, asking questions, requesting assistance, and interacting adequately with peers and adults. T. 229.  Dr. Ransom diagnosed SLS with moderate selective mutism and moderate social phobia with asthma and allergies. T. 229.  Dr. Ransom recommended more intensive mental health and school counseling, assessing a fair to good prognosis with continued treatment. T. 229.  Dr. Toor

diagnosed SLS's history of asthma and allergies, noting no recent hospitalizations, ER visits, or medications. T. 231. His physical examination revealed no abnormalities, and he noted that SLS's speech was normal and that she related to him in an age-appropriate manner. T. 232. Dr. Toor recommended that SLS avoid chemicals, dust, and other items that could affect her asthma and allergies, but he suggested no other medical limitations for physical or recreational activities. T. 234.

State medical consultant Dr. Thomas Harding found no limitation in any domain apart from interacting and relating with others and overall health and physical well being, which he opined were less than marked. T. 237-238.

**III. Non-medical or educational evidence**

On June 25, 2011, plaintiff reported that SLS had three "episodes" of allergic reaction, one asthma attack, no seizures, and no hospitalizations in the prior 12-month period. T. 129-131. There were no reported problems in her ability to move, work, engage in self care, and play alone or with others, in how she acted around others, or concerning her attendance and performance at school. T. 133.

At the time of the hearing, SLS was an eight-year old fourth grader who lived with her mother and five siblings in an apartment. T. 41. Plaintiff testified that her daughter suffered form anxiety in school, selective mutism, a severe peanut allergy, and asthma. T. 42. SLS is unable to speak up in class or read out loud,

10

although she will talk to her teachers in a whisper in a one-on-one setting. T. 42. SLS, who had an individual 504 educational plan, did not speak to her classmates, and her poor social functioning affected her grades, which, though generally decent, had stagnated. T. 42-44. Although SLS's condition was "getting worse" at school, she was able to communicate using a journal. T. 44, 46. She was also able to speak to her siblings at a regular volume and complete chores around the house T. 44-46. SLS took medication for her asthma and was allowed to participate in gym class. T. 47.

**IV. The Commissioner's Decision Denying Plaintiff Benefits is Supported by Substantial Evidence.**

Plaintiff contends that the ALJ's finding that plaintiff had a less than marked limitation in the functional domain of acquiring and using information was not properly addressed in his decision, nor was his finding supported by SLS's teachers, who noted very serious problems in this domain. Plaintiff's memorandum of law, p. 11-16. Defendant responds that the ALJ's decision is supported by substantial evidence because the teachers' questionnaires established that, in general, SLS had no problems expressing herself in written form, learning new material, recalling and applying previously learned material, comprehending information, and performing written problems. Defendant's memorandum of law, p. 11.

Under the SSA, an individual under the age of 18 is entitled to SSI benefits when she has a medically determinable physical or

11

mental impairment that results in marked and severe functional limitations, and which have lasted or can be expected to last for a continuous period of not less than 12 months. *See* 42 U.S.C. § 1382c(a)(3)(C)(i). The regulations set forth a three-step sequential process for the ALJ to follow when evaluating SSI claims for minor children. See 20 C.F.R. § 416.924. The burden of proof rests on the claimant at each step. *See Jonson v. Colvin*, 2013 WL 1314781, at *2 (W.D.Pa.2013).

A finding of disability is warranted if a "marked" limitation is found in any two of the six domains, or an "extreme" limitation in a single domain listed in 20 C.F.R. § 416.926a: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. *See* 20 C.F.R. § 416.926a(b)(1)(i)-(vi); *Ramos v. Barnhart*, 2003 WL 21032012, at *8 (S.D.N.Y.2003). A "marked" limitation exists when the impairment "interferes seriously with [the] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i).

Here, the ALJ's finding that SLS has a less than marked limitation in the domain of acquiring and using information is supported by substantial evidence in the record. In his decision, the ALJ specifically addresses plaintiff's contention by finding that

> [t]he record contains two questionnaires from the claimants's teachers[.] Both noted that [SLS] has a very serious problem using language appropriate to a situation and listener, introducing and maintaining relevant topics of conversation, relating experiences and telling stories. Nevertheless, in several other areas, [her teachers] stated that [SLS] has either no problem or only a slight problem, including reading and comprehending written material, comprehending and performing math problems, learning new material, expressing ideas in written form, and recalling and applying previously learned material.

T. 26.

The ALJ further noted that the teachers' opinions were consistent with the findings of Dr. Ransom's psychiatric evaluation. Consequently, there is no support in the record or the ALJ's decision for plaintiff's assertion that the ALJ failed to explain why the teachers' finding of a very serious problem in activities requiring SLS to participate in class discussions and provide oral explanations or descriptions. It is clear that the ALJ properly considered this issue, and there is substantial evidence in the record to support his conclusion that SLS has a less than marked limitation in the domain of acquiring and using information. Contrary to plaintiff's contention, there is no indication in the record that SLS's daily functioning was seriously limited by her refusal to speak in the classroom or a large peer group. *See* plaintiff's memorandum of law, p. 15. The record establishes that SLS was willing and able to speak to her teachers and close friends individually or in a small group and that her classroom participation increased over the course of the school

year. The record further reveals that SLS was, primarily, meeting, and sometimes exceeding, expectations in school, and there is little evidence that her unwillingness to participate in classroom discussions and express herself orally limited her ability to acquire or use information to a marked degree. Accordingly, the Court finds no error in the ALJ's decision.

The Court has also considered plaintiff's remaining contention that remand is required because the ALJ failed to conduct a credibility analysis related to plaintiff or SLS's father, Mr. Scott, and finds that any such error is harmless. *See Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir.2004); *Bledsoe ex rel. J.D.B. v. Colvin*, 544 Fed.Appx. 823, 825 (10th Cir.2013) (lack of an express credibility finding harmless if no reasonable ALJ, following the correct analysis, could have resolved the factual matter in favor of claimant). Nothing revealed in plaintiff's hearing testimony is materially inconsistent with other evidence contained in the record. In his decision, the ALJ noted that plaintiff testified that SLS had difficulty speaking in public and with classmates, which affected her socially and may have a negative impact on her future performance in school. T. 25. In Mr. Scott's written statement, he noted that SLS did not talk in school and that she experienced school-related anxiety. T. 212. Mr. Scott was concerned that SLS would not be able to speak up during a medical emergency or accident and that, as a result, she could become seriously ill or injured. T. 212. Mr. Scott's

14

statement that SLS had not spoken at all in school in the previous two years, however, is clearly contradicted by the record, which shows that SLS did speak at school in certain circumstances and that her written communication skills were strong.

Based on the foregoing, this Court founds that the record as a whole establishes that the ALJ's decision is supported by substantial evidence.

## **CONCLUSION**

Accordingly, the defendant's cross-motion for judgment on the pleadings is granted, and plaintiff's motion for judgment on the pleadings is denied.  The complaint is dismissed in its entirety with prejudice.  The ALJ's decision denying plaintiff's claim for SSI is supported by the substantial evidence in the record.

ALL OF THE ABOVE IS SO ORDERED.

                                                S/ MICHAEL A. TELESCA
                                        HONORABLE MICHAEL A. TELESCA
                                        UNITED STATES DISTRICT JUDGE

DATED: Rochester, New York
        August 6, 2015